GRISWOLD v. WILSON *et al.*

**Tax-sale and deed:** RIGHTS OF HOLDERS OF CERTIFICATES. The purchaser of a *duplicate* certificate of tax-sale cannot acquire a title thereunder as against, or superior to, that of a subsequent assignee of the original certificate, who purchased it and obtained a deed thereon without notice of the issue of the duplicate or of the rights of the holder thereof.

*Appeal from Jasper District Court.*

FRIDAY, JANUARY 25.

ACTION for the recovery of real property — the west half of the south-east quarter of section three, in township eighty-one, range eighteen, in Jasper county. Wilson only appears and claims the title. The only question made by the pleadings

and upon the evidence is, which party owns the land. The cause was tried to the court upon an agreed statement of facts substantially as follows:

*First.* January 25, 1856, S. Sedoms entered the land of the United States. December 26, 1856, he conveyed it to Isaac Hiefner. February 14, 1857, he conveyed it to J. S. Smith, *who did not file his deed for record till August* 28, 1857. February 21, 1857, Hiefner again conveyed it to Francis Ditman, *who filed his deed for record June* 2, 1857. March 30, 1869, Francis Ditman conveyed to Walter S. McGill. September 29, 1870, *he* conveyed to Charles H. Jack. September 29, 1871, *he* conveyed to plaintiffs, J. A. & H. F. Griswold.

*Second.* October 22, 1863, the treasurer of Jasper county executed a tax deed for the land to Wm. Blackman, pursuant to a sale made and certificate issued October, 1860, to Isaac Hammer, and by him assigned to Blackman, who paid all the taxes on it up to and including 1864. November 26, 1866, Blackman conveyed to James Thompson. April 9, 1868, Thompson conveyed to the defendant, John A. Wilson. September 5, 1871, the treasurer of Jasper county executed a tax deed for the land to the defendant, John A. Wilson, pursuant to a sale made and certificate issued October, 1866, for the taxes of 1865, to I. B. Carnes, and by him assigned to said defendant Wilson.

*Third.* November 4, 1867, the said treasurer again sold said land and many other tracts also, for the delinquent taxes of 1866, to M. M. Price, and issued to him a certificate accordingly, specifying each tract separately, as sold. After the delivery of such certificate, which was in due form for all the lands, the treasurer also delivered to said Price duplicate certificates for each separate tract embraced in the first certificate, and such separate certificates were marked "duplicate," but no mark or check thereof was made on the original.

October 19, 1868, Price assigned the duplicate certificate for the land in controversy to the defendant, John A. Wilson, but no assignment, note or check whatever was indorsed on the original.

April 15, 1869, Price sold and assigned the original certificate to Wm. A. Foster, who purchased it and obtained his deed thereon without any notice of the issue of any duplicate, or of any sale to Wilson; the treasurer's deed was made to him November 8, 1870.

March 21, 1871, Foster conveyed to the aforesaid Charles H. Jack, whose deed therefor *was filed and recorded March 25, 1871.* September 29, 1871, Jack conveyed to plaintiffs who had no notice of any duplicate certificate, or of any claim by Wilson under it, or that he had any possession of the land. Wilson never received any deed under his duplicate certificate.

*Fourth.* All the conveyances were duly executed and acknowledged, and all the tax sales and deeds were regular and legal; and each of all said conveyances was duly filed for record, and indexed and recorded on the day of its date, except as above shown, and indicated by italics.

Upon these facts, the court found for plaintiffs and rendered judgment accordingly. The defendant Wilson appeals.

*Winslow & Wilson* for the appellant.

*Bonorden & Hughes* for the appellees.

COLE, J. — I. The plaintiffs, upon the agreed statement of facts, as embraced in the first paragraph, are the owners of the patent title; or the title originally derived from the United States. For, no notice to Ditman being shown of the prior sale or conveyance by his grantor to Smith, his title being acquired and recorded before the record of such prior conveyance, would be paramount to it. The plaintiffs are the owners of such paramount title by conveyances from Ditman and Jack, successively, to themselves.

II. But the patent or original title was broken up or supplanted by the tax sales and conveyances as specified in the second paragraph of the agreed statement of facts, as above shown. And it appears therefrom that the defendant Wilson has, by conveyances from the purchasers at such sales, acquired

and united in himself the complete tax title which, as we have before and frequently held, is in such cases superior and paramount to the patent title. Had the statement of facts concluded with the close of the second paragraph, as above set out, it would have left Wilson the owner in fee and entitled to a judgment accordingly.

III. After the sales for taxes under which the defendant Wilson acquired his title, the land was again sold for the taxes becoming thereafter delinquent. The title derived under this sale, it being conceded regular and legal, must be paramount to the title held by Wilson. The question then is, which party holds this title or the right to it?

The plaintiffs claim this title by virtue of the assignment of the original certificate of purchase, the deed made by the treasurer thereon to such assignee, and conveyances from him down to themselves. The defendant Wilson claims the right to the title, by virtue of the assignment to him by the tax purchaser of a duplicate of the original certificate of purchase. If Wilson acquired the better right by the assignment of the duplicate to him, his equity would be paramount, and under our practice allowing equitable defenses to law actions, no judgment could properly be rendered against him.

While our statute makes the certificate of purchase of land at a tax sale assignable, so as to vest " all the right and title of the original purchaser" in the assignee; yet, it also specifies the manner of the assignment, to wit: " Shall be assignable *by indorsement.*" The plaintiffs hold the title acquired under the original certificate by " indorsement " thereon, and without any notice of any equity or interest therein by another. Their equity is, therefore, equal to the equity of the defendant, and they having thus acquired their title in the manner provided by the statute, are clothed with the legal title; thereby uniting in themselves both the legal and equitable title. The defendant, by the assignment to him of the duplicate certificate, an instrument not authorized by or known to the law, only acquired an equity. Where the equities are equal the legal title must prevail. In order to

enable the defendant to overturn a subsequent assignment of the original certificate, made in the manner directed by statute, and which passes a legal as well as equitable right, he must show notice or its equivalent to such legal assignee, before he acquired his rights. This he has not done. He was not in possession, or is not shown to have been, until after such legal assignment and the conveyance to the assignee. The plaintiffs, by their purchase, acquired all the rights of their grantor.

We need not discuss the question respecting the obligation of an owner to pay his taxes and not suffer his land to be sold; or his inability to acquire a title by purchase at such sale; for, as we have above seen, the plaintiffs were not the owners at the time of the sale, nor when they acquired the tax title. It may be conceded, as claimed by appellant's counsel, that the defendant's rights would prevail as against Price, if he was the owner now, either upon the plain equity or by estoppel.

<div align="right">

*Affirmed.*